UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


POLAR MOLECULAR CORPORATION,

       Plaintiff,

                                    File No.  1:07-CV-460

v.

                                    HON. ROBERT HOLMES BELL

AMWAY CORPORATION, et al.,

       Defendants,

and

D.N.S. MARKETING COMPANY,

       Counter-Plaintiff,

v.

POLAR MOLECULAR CORPORATION,

       Counter-Defendant.

_____/

## **O P I N I O N**

       Plaintiff Polar Molecular Corporation ("Polar") filed this action against twelve defendants[1] alleging violations of the Lanham Act, breach of contract, misappropriation of trade secrets, conversion, civil conspiracy, and a request for injunctive relief.  Defendants

---

[1] The Defendants are Amway Corporation, Quixtar Inc., Alticor Inc., Access Business Group, Driving Force Technologies LLC, J.B.R. Sullivan Company, D.N.S. Marketing Company, Trans Tech One LLC, Bill Newton, Jeff Selzer, Robert Disberger, and Isabelle's Lighting.

J.B.R. Sullivan Company, D.N.S. Marketing Company, Bill Newton, Jeff Selzer and Robert Disberger (collectively the "DNS Defendants") have filed an amended motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or 12(c).  (Dkt. No. 37.)  Defendants Amway Corporation, Quixtar Inc., Alticor Inc., and Access Business Group L.L.C. (collectively the "Amway Defendants") have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 for failure to state a claim upon which relief can be granted, and for factual deficiency.  (Dkt. No. 38.)  The DNS Defendants have filed a concurrence in the Amway Defendants' motion to dismiss.  (Dkt. No. 40.)  For the reasons that follow Defendants' motions to dismiss will be granted in part and denied in part.

## I.

The Court will first address Defendants' motions for dismissal under Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure.  These motions challenge the sufficiency of Plaintiff's pleadings.  The standard of review for a Rule 12(c) motion for judgment on the pleadings is nearly identical to that employed for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006).  In reviewing a motion under either rule the court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief."  *Vickers v. Fairfield*

*Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006) (quoting *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998)).   However, the court need not accept as true legal conclusions or unwarranted factual inferences.  *Kottmyer*, 436 F.3d at 688-89.

The allegations in Plaintiff's complaint that are relevant to the motions to dismiss can be summarized as follows.  Plaintiff, an operating company in the petroleum additives business, is the owner of numerous patents and trademarks including certain patents covering its fuel additive product "DurAlt."  (Compl. ¶¶ 16, 19, 20.)  In 1988, 1992, and 1995, Plaintiff entered into a series of agreements with the Amway Defendants, granting the Amway Defendants the exclusive right to make, use, and sell DurAlt.  (Compl. ¶¶ 18, 24, 31.)  The Amway Defendants have been selling Plaintiff's DurAlt product under the label "Freedom Fuel" since 1988 under a licensing agreements with Plaintiff.  (Compl. ¶¶ 19, 60.)  Pursuant to the confidentiality provisions of the licensing agreements, Plaintiff has provided the Amway Defendants with confidential formulas for DurAlt.  (Compl. ¶¶ 43, 72.)

Defendants Disberger, Newton, and Selzer are top distributors for the Amway Defendants. (Compl. ¶ 36.)  In 2005 the DNS Defendants entered into agreements with Plaintiff regarding royalties and fleet sales.  (Compl. ¶ 39.)  However, Plaintiff declined to approve an agreement between the Amway Defendants and J.B.R. Sullivan, one of the DNS Defendants, that would have permitted J.B.R. Sullivan to manufacture DurAlt. (Compl. ¶ 41.)  After Plaintiff rejected the agreement between the Amway Defendants and J.B.R. Sullivan, the Amway Defendants discontinued the manufacture and sale of DurAlt.

(Compl. ¶ 42.)   The Amway Defendants then provided the confidential formulas for Plaintiff's DurAlt products to the DNS Defendants in breach of the 1995 License Agreement.   (Compl. ¶¶ 43, 44, 75.)   The DNS Defendants have used the confidential DurAlt formulas to manufacture a fuel additive under the label "ProFuel x 2," (hereinafter "ProFuel") which is a "knock off" of DurAlt.   (Compl. ¶¶ 45-47.)   In their marketing of ProFuel, Defendants have told potential customers that the name of the product is "Freedom 2" and that they have a licensing agreement with Plaintiff for the manufacture and sale of this product.   (Compl. ¶ 49.)

## A.  Lanham Act

Count I of Plaintiff's complaint alleges that Defendants' use of the name "Freedom 2" and their false and misleading statements of fact have caused Plaintiff harm in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[2]   (Compl. ¶ 52.)   Specifically,

---

[2]Section 43(a) of the Lanham Act provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .

. . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

4

Plaintiff alleges that "Defendants have told potential and actual customers, throughout the country, that the name of the product is 'Freedom 2' and that there is a licensing agreement with Mark Nelson and Plaintiff for the manufacture and sale of this product." (Compl. ¶ 49.)

Defendants move to dismiss Count I of Plaintiff's complaint for failure to state a claim under the Lanham Act. Defendants contend that Plaintiff has failed to state a claim for trademark infringement because Plaintiff has no interest in the name "Freedom." In support of this argument Defendants rely on *MJ & Partners Restaurant Ltd. v. Zadikoff*, 10 F. Supp. 2d 922 (N.D. Ill. 1998), where the court held that the holder of a mark is the "source" of the goods, and there can be no likelihood of confusion for purposes of § 1125(a) as a matter of law where the product is sponsored by the mark's owner. *Id.* at 928. According to *MJ & Partners*, "'confusion exists only where the public believes that a product is sponsored by the mark's owner when in fact it is not.'" *Id.* at 928 (quoting *Ballet Makers, Inc. v. United States Shoe Corp.*, 633 F. Supp. 1328, 1334 (S.D. N.Y. 1986)). Defendants contend that because Amway is the owner of the "Freedom" mark, under Plaintiff's own allegations Amway is the "source" of the fuel additives sold under both the "Freedom Fuel" and the "Freedom 2" marks, so there can be no confusion as a matter of law.

---

15 U.S.C. § 1125(a)(1).

In response to Defendants' motions to dismiss the Lanham Act claim Plaintiff does not contest Defendants' representation that the "Freedom" mark is owned by the Amway Defendants; Plaintiff does not allege that it has an interest in the "Freedom" mark; and Plaintiff does not contend that it has stated a claim of trademark infringement based upon Defendants' use of the "Freedom" mark.

The Court finds that Plaintiff has failed to state a claim for trademark infringement based upon Defendants' use of the "Freedom" mark.  A section 43(a) unfair competition claim cannot be brought against a defendant who has priority rights to the mark at issue as against the plaintiff.  *Empresa Cubana del Tabaco v. Culbro Corp*., 399 F.3d 462, 478 (2nd Cir. 2005) (holding that Cubatabaco's § 43(a) claim against General Cigar's use of the COHIBA mark could not succeed as a matter of law because General Cigar owned the mark in the United States and General Cigar's legal right to the COHIBA mark in the United States had therefore been established as against Cubatabaco).  A plaintiff cannot show a likelihood of confusion if it does not have an ownership or other legal interest in the mark:

> While Lanham Act § 43(a)(1)(A) does not explicitly require that the plaintiff be the owner of a protectable mark, there is no other way that the requisite likelihood of confusion, deception or mistake can occur. That is, unless plaintiff is the owner of a valid trademark or service mark, the accused designation will not cause a likelihood of confusion.

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:13 (4th ed.
2007).  Although ownership of a mark is not required for standing to sue under § 433(a),[3]
"where the subject matter of the § 43(a) claim is a trademark, the plaintiff 'must have some
discernable interest in the mark' to have standing to sue." McCarthy, *supra*, § 27:21 (quoting
*Shonac Corp. v. AMKO Int'l, Inc.*, 763 F. Supp. 919 (S.D. Ohio 1991) (decided under the
pre-1989 version of Lanham Act § 43(a)).  Because Plaintiff has not alleged that it owns the
"Freedom" mark or that it has any other legal interest in the "Freedom" mark, the Court
concludes that Plaintiff cannot state a § 43(a) Lanham Act claim against Defendants based
upon their use of the "Freedom" mark.

Although it appears that Plaintiff has in effect conceded that it has failed to state a
claim for trademark infringement based upon Defendants' use of the "Freedom" mark,
Plaintiff does not concede that it has failed to state a claim under § 43(a) of the Lanham Act.
Instead, Plaintiff asserts that its complaint has adequately set forth the elements of a claim
for liability under the Lanham Act because Defendants' false assertion that they purchased
the rights to Plaintiff's technology with Plaintiff's permission, has caused confusion as to the
affiliation, connection, or association of ProFuel with Plaintiff and as to the origin,
sponsorship, or approval of Defendants' ProFuel.   (Dkt. No. 48, Pl. Resp. Br. 12.)

_____

[3]Standing to sue under § 43(a) has also been granted to exclusive or non-exclusive
United States distributors of foreign-made branded products and to exclusive licensees of
a mark.  McCarthy, *supra*, § 27.21 (citing cases).

Section 1125(a) of the Lanham Act is not limited to trademark issues. *See Gnesys, Inc. v. Greene*, 437 F.3d 482, 488-89 (6th Cir. 2005) ("By the statute's clear language, it is not limited to trademark issues.").

> While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, . . . 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection. As originally enacted, [§ 1125(a)] created a federal remedy against a person who used in commerce either "a false designation of origin, or any false description or representation" in connection with "any goods or services."

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003).

The DNS Defendants have not responded to Plaintiff's attempt to salvage its Lanham Act claim. In their reply brief the DNS Defendants merely restate their argument that because Plaintiff has not alleged that it owns or has a protectible interest in the "Freedom" mark, the Court should dismiss Count I. (Dkt. No. 49, DNS Def. Reply Br. 4.)

The Amway Defendants have recognized that Plaintiff has raised an alternative basis for their Lanham Act claim. They nevertheless contend that Plaintiff's attempt to salvage its Lanham Act claim is futile because it is based on hearsay and because it does not apply to the Amway Defendants.

On a motion to dismiss under Rule 12(b)(6) or 12(c), the Court must confine its review to the allegations in the complaint and accept all of the complaint's factual allegations as true. *Vickers*, 453 F.3d at 761. Whether the allegations in the complaint are based on hearsay is not relevant to a motion under Rule 12(b)(6) or 12(c). Plaintiff has alleged in its complaint that "Defendants" have told potential and actual customers that there is a licensing

agreement with Plaintiff for the manufacture and sale of ProFuel. (Compl. ¶ 56.) The term "Defendants" is broad enough to include the Amway Defendants. Accordingly, the arguments raised by the Amway Defendants do not provide the Court with a basis for dismissing Plaintiff's Lanham Act claim.

None of the Defendants has directly challenged the legal sufficiency of Plaintiff's assertion that it has adequately stated a Lanham Act claim based upon Defendants' allegedly false assertion that they purchased the rights to Plaintiff's technology with Plaintiff's permission, which has caused confusion as to the affiliation, connection, or association of ProFuel with Plaintiff and as to the origin, sponsorship, or approval of Defendants' ProFuel. Accordingly, the Court will dismiss the Lanham Act claim to the extent it is based upon trademark infringement, but the Court declines to rule on the sufficiency of Plaintiff's Lanham Act claim to the extent that it is based upon false statements that have caused confusion as to Defendants' association with Plaintiff or as to Plaintiff's sponsorship or approval of Defendants' goods or commercial activities.

**B. Misappropriation of Trade Secret**

In Count III of its complaint Plaintiff alleges that Defendants have used improper means to misappropriate Plaintiff's valuable trade secrets in violation of the Michigan common law and the Michigan Uniform Trade Secrets Act ("MUTSA"), M.C.L. §§ 445.1901-.1910. (Compl. ¶ 83.)

The DNS Defendants have moved to dismiss Count III.  They contend that Plaintiff has failed to state a claim for trade secret misappropriation because Plaintiff published the DurAlt formula in a patent.  (DNS Def. Br. 5.)

Plaintiff contends that it has adequately stated a claim for misappropriation of trade secrets because during the course of its licensing agreement with Amway it provided Amway with additional improved DurAlt formulas that were not disclosed in the '661 patent, including the specific formula at issue in the present litigation, i.e., the formula utilized for ProFuel.  (Pl. Resp. Br. 12.)

"Under Michigan law, '[t]o be a trade secret, the information must, of necessity, be a Secret.'"  *Wysong Corp. v. M.I. Indus.*,  412 F. Supp. 2d 612, 626 (E.D. Mich. 2005) (quoting *Kubik, Inc. v. Hull*, 56 Mich. App. 335, 347, 224 N.W.2d 80 (1974)).  "Trade secrets do not 'encompass information which is readily ascertainable, i.e., capable of being acquired by competitors or the general public without undue difficulty or hardship.'"  *Id.* (quoting  *Kubik, Inc.*, 56 Mich. App. at 348).  "The property right in a trade secret ceases to exist after the secret has become public property through general disclosure.  If a trade secret is patented there is no further right to secrecy."  *Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95, 99 (6th Cir. 1975).

Although information disclosed in a patent cannot be a trade secret, and although patents are required to contain a written description of the invention in sufficient detail to enable a person skilled in the art to make and use the invention, 35 U.S.C. § 112, the

existence of a patent covering the general subject matter does not necessarily mean that the patent disclosed the specific formula (the trade secret) used to produce a specific commercial product. *See Bd. of Regents, Univ. of Tex. Sys., ex rel. Univ. of Tex. at Austin v. Nippon Tel. and Tel. Corp.*, 414 F.3d 1358, 1365 (Fed. Cir. 2005) (rejecting argument that trade secret claims were extinguished by the filing of a patent application); *Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 720 (5th Cir. 2006) ("Given the existence of conflicting evidence from which a reasonable person might draw differing conclusions, it is clear that the jury could have concluded – and apparently did conclude – that the patents did not reveal Carbo's trade secrets.").

Plaintiff has alleged in its complaint that "through various contracts with Plaintiff, the Amway Companies gained confidential information, specifically the formulae for DurAlt." (Compl. ¶ 72.)  Plaintiff has further alleged that the information was not known to others and that it gave Plaintiff a competitive advantage over other businesses that did not have access to this information.  (Compl. ¶¶ 73-74.)

The Court is satisfied that the allegations in Plaintiff's complaint, construed  in the light most favorable to Plaintiff, *see Vickers*, 453 F.3d at 761, are sufficient to state a claim for misappropriation of trade secret.  The DNS Defendants' motion to dismiss Plaintiff's trade secret misappropriation claim under the MUTSA, as alleged in Count III, will accordingly be denied.

## C.  Common Law Misappropriation, Conversion, and Civil Conspiracy

Defendants contend that Plaintiff's common law misappropriation, conversion, and civil conspiracy claims found in Counts III, IV and V are legally preempted or displaced by section 8 of the MUTSA.[4]

The MUTSA displaces claims that are "based solely upon the misappropriation of a trade secret." *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 946 (W.D. Mich. 2003) (Quist, J.). If a claim is based solely upon the misappropriation of a trade secret, the claim must be dismissed. *Id.* However, claims based upon wrongful conduct independent of the misappropriation of trade secrets are not displaced by the MUTSA. *Id.* at 950. In *Bliss Clearing* the court held that the plaintiff's conversion claim was preempted because the allegations centered exclusively on the defendant's allegedly unauthorized use of the plaintiff's trade secrets. *Id.* at 950. The court held that the plaintiff's

---

[4]Section 8 of the MUTSA provides:

(1) Except as provided in subsection (2), this act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.

(2) This act does not affect any of the following:

(a) Contractual remedies, whether or not based upon misappropriation of a trade secret.

(b) Other civil remedies that are not based upon misappropriation of a trade secret.

(c) Criminal remedies, whether or not based upon misappropriation of a trade secret.

M.C.L. § 445.1908.

common law misappropriation claim was also preempted because the plaintiff had not attempted to distinguish its common law claim from its MUTSA statutory claim. *Id.* at 951. Finally, the court held that to the extent the plaintiff's tortious interference and unfair competition claims were based upon the theft or misuse of trade secrets they would be preempted, but because the plaintiff had also alleged wrongful conduct independent of the defendant's alleged trade secret misappropriation, the court denied the motion to dismiss these counts. *Id.* at 949-50. *See also Wysong Corp. v. M.I, Indus.*, 412 F. Supp. 2d 612, 623-25 (E.D. Mich. 2005) (holding that the MUTSA displaced the portions of the unjust enrichment and conspiracy claims that allege enrichment from misappropriation, but not those portions based on wrongful acts independent of misappropriation, such as the alleged sale of deceptively similar products, or the alleged breaches of duty for creating a product line).

Plaintiff has not attempted to distinguish its common law misappropriation claim from its statutory claim. Therefore, to the extent that Count III relies on a common law claim of misappropriation of trade secrets, the claim is displaced by the MUTSA. *See Bliss Clearing*, 270 F. Supp. 2d at 951 (dismissing common law misappropriation claim).

Plaintiff does, however, dispute Defendants' contention that its conversion and conspiracy claims are displaced by the MUTSA. Plaintiff contends that it has set forth a viable conversion claim because it has alleged wrongful conduct independent of the alleged trade secret misappropriation, i.e. breach of contract. Plaintiff has alleged that the Amway

13

Defendants "took Plaintiff's formula for DurAlt, in violation of the 1995 License Agreement, and converted it to their own use by providing this formula to JBR Sullivan and DNS Marketing, through Newton, Selzer and Disberger." (Compl. ¶ 85.) Plaintiff specifically directs the Court's attention to paragraph 5 of the Licence Agreement.

Contrary to Plaintiff's assertions, Plaintiff's conversion claim is based solely upon the misappropriation of a trade secret. Paragraph 5 of the License Agreement specifically provides that the obligations of confidence and non-use "shall not apply to information which . . . was known to recipient prior to disclosure hereunder" or was "known to the general public." (Compl. Ex. 8, 1995 Lic. Agrm't ¶ 5.) Because the confidentiality and non-use provision that was allegedly breached only applies to trade secrets, Plaintiff's conversion claim is based solely upon the theft or misuse of a trade secret. Accordingly, Plaintiff's conversion claim is displaced by the MUTSA.

With respect to its conspiracy claim, Plaintiff contends that Defendants have failed to cite any Michigan appellate case which has ruled that a civil conspiracy claim is preempted under Michigan law, and that, in any event, Plaintiff's allegation that Defendants have deceptively marketed a knock off product is sufficient to state a claim that is not displaced by the MUSTA.

In *CMI International, Inc. v. Intermet International Corp.*, 251 Mich. App. 125, 649 N.W.2d 808 (2002), the plaintiff filed an action alleging breach of contract, violation of the MUTSA, tortious interference with contractual relations, unjust enrichment and constructive

14

trust, inevitable breach of trust and fiduciary duty, and conspiracy. *Id.* at 128. After affirming the summary disposition of the plaintiff's breach of contract and tortious interference claims, the court held that "CMI's remaining claims [which included the conspiracy claim] necessarily are based on Michigan's UTSA, because that statute displaced conflicting tort remedies for misappropriation of a trade secret." *Id.* at 132 (discussed in *Wysong*, 412 F. Supp. 2d at 623). In *Wysong*, the court, relying in part on *CMI International*, held that the plaintiff's conspiracy claim was displaced by the MUTSA to the extent that it was based on the wrongful theft of secret information, but that the claim survived to the extent that it was based on the alleged sale of deceptively similar products and allegations of breaches of duty for creating a product line. 412 F. Supp. 2d at 624-25.

Plaintiff alleges in its complaint that "the Defendants worked together in a concerted action to unlawfully obtain the patented formulas for DurAlt to be used in the manufacture and sale of a knock-off product." (Compl. ¶ 94.) Plaintiff has also alleged that "Defendants, through this conspiracy, misappropriated Plaintiff's trade secrets and converted Plaintiff's property in an effort to produce and sell a knock-off product." (Compl. ¶ 99.) To the extent Plaintiff's conspiracy claim is based upon the alleged theft of a trade secret, the claim is displaced by the MUTSA. Under a liberal reading of Plaintiff's complaint, however, the Court believes it is possible to understand Plaintiff's conspiracy claim as being based, at least in part, on palming-off or unfair competition. For example, Plaintiff refers to ProFuel as a "knock-off" of DurAlt (Compl. ¶ 46), and alleges that Defendants falsely stated

that they have a licensing agreement from Plaintiff, that Defendants have used the name "Freedom 2," and that Defendants' marketing employs testimonials nearly identical to those used to sell the licensed Freedom Fuel product.  (Compl. ¶ 49 & n.6.)

For the reasons stated above, the Court will grant Defendants' motion to dismiss Plaintiff's common law trade secret misappropriation claim and Plaintiff's conversion claim, but will deny Defendant's motion to dismiss Plaintiff's conspiracy claim except to the extent that the conspiracy claim is based upon trade secret misappropriation.

## D.  Injunctive Relief

Defendants contend that Count IV, Request for Permanent Injunction, should be dismissed because it fails to state a claim on which relief can be granted.  In support of their motion Defendants assert that an injunction is a remedy rather than a separate cause of action.  *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004) ("[A] traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed . . . .").

Plaintiff has clarified in its response that its purpose in including Count VI was merely to identify a request for injunctive relief and was never intended to state separate cause of action.  With that understanding, the Court denies Defendants' motion to dismiss Count VI.  **E.  Personal Jurisdiction over Newton, Disberger, and Selzer**

Defendants Newton, Disberger, and Selzer move to dismiss the complaint against them because the complaint fails to assert any facts supporting the Court's exercise of

16

personal jurisdiction over them.   These Defendants have not directly challenged the existence of personal jurisdiction over them.   Through this motion they merely challenge Plaintiff's alleged failure to plead facts to support the exercise of personal jurisdiction over them.

The individual DNS Defendants cite no authority in support of such a pleading requirement, and the authority the Court has located is to the contrary.   General rules of pleading are governed by Federal Rule of Civil Procedure 8(a), which requires a complaint to contain a short and plain statement of grounds on which the court's jurisdiction depends, the claim, and the relief requested.   Fed. R. Civ. P. 8(a).   For purposes of Rule 8, "jurisdiction" refers to subject matter jurisdiction.   2 James Wm. Moore et al., *Moore's Federal Practice* § 8.03[1] (3d ed. 2007).   There is no requirement that the complaint allege a basis for asserting personal jurisdiction over the defendant.   *See* 4 Charles Alan Wright et al., *Federal Practice and Procedure* § 1067.6 (3d ed. 2007) (collecting cases and noting that "strictly speaking, under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants").   *Accord In re Enron Corp.*, 316 B.R. 434, 439 (Bankr. S.D.N.Y. 2004) (rejecting motion to dismiss for failure to allege facts supporting personal jurisdiction because Rule 8(a)(1) does not apply to personal jurisdiction); *D'Addario v. Geller*, 264 F. Supp. 2d 367, 390 n.29 (E.D. Va. 2003) (basing finding of personal jurisdiction on a ground not raised in the pleadings).   While the plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant, *Neogen Corp.*

17

*v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002), there is no requirement that the Plaintiff allege facts to support that burden in its pleadings. The DNS Defendants' Rule 12(b)(6) motion to dismiss Defendants Newton, Disberger, and Selzer because the complaint fails to assert facts supporting the Court's exercise of personal jurisdiction over them will accordingly be denied.

### III.

In addition to challenging the legal sufficiency of Plaintiff's pleadings, the Amway Defendants have moved for summary judgment on Counts II and III pursuant to Rule 56 based upon their contention that these counts are factually deficient. The DNS Defendants have concurred in this motion.[5]

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

---

[5]The Count II breach of contract claim is directed only at the Amway Defendants.

18

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of America*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.; see generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## A.  Reasonable Efforts Under ¶ 11.1

Plaintiff's breach of contract claim in Count II alleges that the Amway Defendants breached the 1995 License Agreement in 2006 in two distinct manners:  by disclosing confidential information, and failing to use reasonable efforts to offer DurAlt to their affiliates and subsidiaries. (Compl. ¶ 68.) The Court will first address Plaintiff's allegation that the Amway Defendants breached the Agreement by "refusing to perform" and failing to use "reasonable efforts" to offer DurAlt to their affiliates/subsidiaries worldwide in violation of paragraph 11.1. (Compl. ¶ 68(A), (E).) Plaintiff's allegation that the Amway Defendants breached the Agreement by disclosing confidential information will be addressed in section III.B below.

The Amway Defendants contend they are entitled to summary judgment on Plaintiff's claim that they breached paragraph 11.1 because this claim is barred by the six year statute

of limitations applicable to contract actions.  *See* M.C.L. § 600.5807(8) (setting a six year limitations period for actions to recover damages for breach of contract).  The Amway Defendants, citing paragraph 11.2, contend that any obligation they had to use reasonable efforts to offer the product to their affiliates ended five years after  the execution of the contract, which was more than six years before Plaintiff filed this suit.

Plaintiff contends that the five year period referenced in paragraph 11.2 only concerns the Amway Defendants' exclusive right to market the product and does not limit the period during which the Amway Defendants were obligated to use reasonable efforts to offer the product to their affiliates.  Plaintiff contends that if the Court finds that paragraphs 11.1 and 11.2 are interrelated, an ambiguity exists which must be resolved by a jury.   (Pl. Resp. Br. 17 n.14.)

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties."  *City of Grosse Pointe Park v. Mich. Mun. Liab. and Prop. Pool*, 473 Mich. 188, 197, 702 N.W.2d 106 (2005) (quoting *McIntosh v. Groomes*, 227 Mich. 215, 218, 198 N.W. 954 (1924)).  Contracts should be read as a whole, "giving harmonious effect, if possible, to each word and phrase."  *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 50 n.11, 664 N.W.2d 776 (2003).  If the language of a contract is clear and unambiguous, it is to be construed according to its plain sense and meaning.  *Gross Pointe*, 473 Mich. at 198. "'Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic

facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.'" *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 469, 663 N.W.2d 447 (2003) (quoting *O'Connor v. March Automatic Irrigation Co.*, 242 Mich. 204, 210, 242 N.W. 784 (1928)).

Paragraph 11 of the License Agreement, which is entitled "Worldwide Sales of the Product" provides:

> 11.1   AMWAY has a worldwide Direct Sales network of affiliates and subsidiaries that have been or will be offered the opportunity to market and sell the Product through their distributors.   PMC [Polar Molecular Corporation] understands that the decision on whether or not an affiliate or subsidiary of AMWAY markets any product offered by AMWAY is within the sole discretion and control of the affiliate or subsidiary.   AMWAY agrees that it will use its **reasonable efforts to offer** the Product to its affiliates and subsidiaries worldwide for their determination as to the marketability of the Product in their country.

> 11.2   In the event AMWAY **does not offer** the Product within **five (5) years** of the Execution Date to an affiliate or subsidiary of AMWAY responsible for marketing AMWAY products in countries where AMWAY products are currently being actively marketed, then AMWAY's **exclusive right** to market the Product in that specific country only as granted by Section 2.1 shall **terminate**.

(1995 Lic. Agrm't ¶ 11 (emphasis added).)

The Amway Defendants contend that paragraph 11.2 sets the term of the "reasonable efforts" obligation of paragraph 11.1 at five years and establishes that the penalty for non-performance is the loss of the exclusive right to market the Product in the specific country where the product was not offered during that five year period.

Plaintiff contends that paragraphs 11.1 and 11.2 are two separate and distinct contract provisions and that they should not be read together. According to Plaintiff, even if Amway loses its exclusive right to market the product under paragraph 11.2, it still retains its right to market the product and is still obligated to make reasonable efforts to market the product under paragraph 11.1.

Plaintiff's proposed construction of the reasonable efforts requirement is not persuasive. Contrary to Plaintiff's assertions, paragraphs 11.1 and 11.2, when read in sequence, are clearly tied together. In paragraph 11.1 Plaintiff acknowledges that any decision on whether to market any product offered by AMWAY is within the sole discretion and control of the affiliate or subsidiary. Amway agrees, nevertheless, to use its best efforts to offer the product to its affiliates and subsidiaries. Paragraph 11.2 provides that if Amway does not offer the product to Amway affiliates in a particular country in the first five years of the contract, Amway will lose its exclusive license to market the product in that particular country. Loss of the exclusive license is a substantial penalty because the entire contract is directed toward the grant of an exclusive license to Amway.[6] To suggest that Amway has a continuing obligation to use reasonable efforts to offer the product to its affiliates more than five years after the execution of the contract would render the five year provision in

_____

[6]The License Agreement's "whereas" clauses provide that "PMC has the right and desire to grant AMWAY an **exclusive license**" and "AMWAY desires to obtain an **exclusive licence** from PMC." (1995 Lic. Agrm't, p. 1 (emphasis added).) The license granted under the contract is "the **exclusive right and license** to use and Practice the Licensed Technology in the Field and to make, have made, use and sell the Product in the Field." (*Id.* at ¶ 2.1 (emphasis added).)

paragraph 11.2 meaningless.  It would also render paragraph 4.5 meaningless.  Paragraph 4.5 provides:

> This Agreement shall automatically terminate in the event AMWAY fails to purchase Product from its manufacturer/supplier for a period of one (1) full year, except if AMWAY's failure to purchase Product is due to reasons beyond AMWAY's control.

(1995 Lic. Agrm't ¶ 4.5.)  If Amway had a continuing obligation to use its reasonable efforts to offer the Product to its affiliates beyond the five year term, it would not be able to exercise its negotiated right to terminate the contract under paragraph 4.5.

The Court concludes that Paragraph 11.1 of the License Agreement is not ambiguous. When the License Agreement is read as a whole, paragraph 11.1 admits of but one interpretation:  the obligation to use reasonable efforts to market the Product in paragraph 11.1 is limited to the five year period described in paragraph 11.2.

In light of this construction, Plaintiff cannot prevail on its claim that in 2006 the Amway Defendants breached the obligation to use reasonable efforts under paragraph 11.1. Under the 1995 License Agreement the Amway Defendants did not have an obligation to use reasonable efforts in 2006, and to the extent Plaintiff contends they failed to use reasonable efforts in the first five years of the contract, those claims are barred by the six year statute limitations applicable to contracts.  The Amway Defendants are accordingly entitled to summary judgment on Plaintiff's breach of contract claim to the extent it is based upon a breach of paragraph 11.1.

**B.  Trade Secrets**

Defendants contend that they are entitled to judgment on Count III, alleging misappropriation of trade secrets, and on Count II to the extent that it alleges breach of contract based on disclosure of confidential material, because the uncontroverted facts show that the Amway Defendants did not provide any confidential formula to any unauthorized third party and because Plaintiff's allegedly confidential formula was the subject of an expired patent and was readily reverse engineered.  In support of this motion Defendants have provided declarations from Amway employees Michael Sullivan, Robert D. Faber, and Linda Emperor, from Defendants Newton, Disberger, and Selzer, and from Stephen Lehnardt, a managing member of Defendants Trans Tech One, L.L.C. and Driving Force Technologies, L.L.C.  (Dkt. No. 38, Amway Defs. Mot., Ex. 2-8.)  These seven affidavits uniformly state that there has been no unauthorized disclosure of any of Plaintiff's confidential fuel additive formulas and that ProFuel was independently developed through reverse engineering based on an analysis of Amway's Freedom Fuel product and the fuel additive technology disclosed in Plaintiff's expired U.S. Patent No. 4,753,661.

In response to the motion for summary judgment Plaintiff has presented evidence that it supplied the Amway Defendants with the formulas for more advanced versions of DurAlt pursuant to the confidentiality provisions of the License agreement,  (Pl. Resp., Nelson Aff. ¶ 12); that the chemical scan of ProFuel is nearly identical to DurAlt Gasoline Fuel

Conditioner, the formula for which was supplied to the Amway Defendants, (Compl. Ex. 15; Nelson Aff. ¶ 24); that ProFuel has been advertised for sale through Amway websites, (Pl. Ex. 6, 11); that the ProFuel testimonials are nearly identical to those used for Freedom Fuel (Nelson Aff. ¶ 29); that the Amway Defendants generally require a lengthy product claims verification procedure, (Nelson Aff. ¶ 22); and that the rapid introduction of ProFuel for sale through Amway approved websites suggests that Defendants relied on Plaintiff's confidential test data, (Nelson Aff. ¶¶ 21-22).

The evidence presented by Plaintiff is not sufficient to controvert the evidence produced by the Amway Defendants. While Plaintiff suspects improper disclosure of its confidential formula and doubts that ProFuel was developed through reverse engineering from public information, Plaintiff's suspicions and doubts are not sufficient to establish the existence of a genuine issue of material fact for trial. Plaintiff contends, however, that the Court should not rule on Defendants' motion for summary judgment until Plaintiff has had an opportunity for discovery.

Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Rule 56(f) requires a party opposing a summary judgment motion to file an affidavit that "'indicate[s] to the district court its need for discovery, what material

facts it hopes to uncover, and why it has not previously discovered the information.'" *Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir.2000)). *See also*, *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir.2003) (requiring the non-moving party to (1) file an affidavit that details the discovery needed, and (2) explain how it will help rebut the movant's showing of the absence of a genuine issue of material fact).

In support of its request for discovery Plaintiff has offered the affidavit of its attorney, Russell Babcock. Mr. Babcock has indicated that Plaintiff and its agents were obviously and intentionally left out of the interactions and conduct which the declarants reference in their declarations, that the interactions and conduct described are highly suspect and improbable, and that in order to challenge these self-serving declarations and to adequately defend against Defendants' motion, Plaintiff must have an opportunity to conduct discovery. (Babcock Aff. ¶¶ 5-6, 8.) Plaintiff requests an opportunity to depose the declarants, their distributors, Defendants' agents, and other witnesses, and to seek information and documents regarding the alleged research which resulted in Defendants' development of ProFuel and information and documents surrounding the interaction of Defendants in the context of Freedom Fuel and ProFuel. (Babcock Aff. ¶ 7.)

The Court is satisfied that Plaintiff has shown a need for some discovery to resolve the issues of misappropriation of trade secret and the disclosure of confidential information. The Court accordingly declines to rule on Defendants' motion for summary judgment on

Count III and on that portion of Count II that is based upon breach of the License Agreement's confidentiality provision.  Discovery will be limited to a sixty day period, and will be confined to the issues of the Amway Defendants' alleged disclosure of Plaintiff's advanced DurAlt formula to the other Defendants and the development of the formula for ProFuel.  Following the close of this limited discovery period Plaintiff will have 21-days to file a supplemental brief, and Defendants will have 14-days thereafter to file a reply.

An order consistent with this opinion will be entered.


Date:   November 14, 2007            /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE

27