UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLAR MOLECULAR CORPORATION,

       Plaintiff,

v.

       File No. 1:07-CV-460

AMWAY CORPORATION, et al.,

       HON. ROBERT HOLMES BELL

       Defendants,

and

D.N.S. MARKETING COMPANY,

       Counter-Plaintiff,

v.

POLAR MOLECULAR CORPORATION,

       Counter-Defendant.
       /

## **O P I N I O N**

In a six-count complaint filed in this action Plaintiff Polar Molecular Corporation has alleged violations of the Lanham Act, breach of contract, misappropriation of trade secrets, conversion, civil conspiracy, and a request for injunctive relief. The Amway Defendants[1]

---

[1] The Amway Defendants are Defendants Amway Corporation, Quixtar Inc., Alticor Inc., and Access Business Group L.L.C.

and the DNS Defendants[2] filed dispositive motions.  (Dkt. Nos. 37, 38.)  By order dated November 14, 2007, this Court dismissed Count IV alleging conversion, dismissed portions of Counts I, II, III, and V, and permitted limited discovery and supplemental briefing confined to the confidentiality and trade secret claims in Counts II and III.  (Dkt. No. 53, 11/14/2007 Order.)   Plaintiff has now filed a supplemental response in opposition to Defendants' motion for summary judgment, (Dkt. No. 65), and the Amway Defendants have filed a supplemental reply brief (Dkt. No. 73).  The DNS Defendants have filed a concurrence in the Amway Defendants' motion to dismiss and their supplemental reply. (Dkt. Nos. 40, 74.)

**I.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

---

[2]The DNS Defendants are Defendants J.B.R. Sullivan Company, D.N.S. Marketing Company, Bill Newton, Jeff Selzer, and Robert Disberger.

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## II.

Plaintiff alleges in Count II that the Amway Defendants breached the 1995 Licensing Agreement in 2006 by disclosing confidential information. Plaintiff alleges in Count III that the Amway Defendants and the DNS Defendants misappropriated trade secrets. Both counts relate to Plaintiff's claim that the Amway Defendants disclosed the confidential formulas for Plaintiff's DurAlt products to the DNS Defendants, and that the DNS Defendants used these confidential formulas in developing their ProFuel product.

Defendants contend that they are entitled to summary judgment on Counts II and III because the uncontroverted facts show that the Amway Defendants did not provide any confidential formula to any unauthorized third party. In support of this motion Defendants previously provided declarations from Amway employees Michael Sullivan, Robert D. Faber, and Linda Emperor, from Defendants Newton, Disberger, and Selzer, and from

3

Stephen Lehnardt, a managing member of Defendants Trans Tech One L.L.C. and Driving Force Technologies L.L.C. (Dkt. No. 38, Amway Defs.' Mot. to Dismiss, Ex. 2-8.) These seven affidavits uniformly state that there was no unauthorized disclosure of any of Plaintiff's confidential fuel additive formulas and that ProFuel was independently developed through reverse engineering based on an analysis of Amway's Freedom Fuel product and the fuel additive technology disclosed in Plaintiff's expired U.S. Patent No. 4,753,661.

In its original response to Defendants' motion for summary judgment Plaintiff presented evidence that it supplied the Amway Defendants with the formulas for more advanced versions of DurAlt pursuant to the confidentiality provisions of the 1995 Licensing Agreement, (Pl.'s Resp., Nelson Aff. ¶ 12); that the chemical scan of ProFuel is nearly identical to DurAlt Gasoline Fuel Conditioner, the formula for which was supplied to the Amway Defendants, (Compl. Ex. 15; Nelson Aff. ¶ 24); that ProFuel has been advertised for sale through Amway websites, (Pl. Ex. 6, 11); that the ProFuel testimonials are nearly identical to those used in the marketing of Freedom Fuel (Nelson Aff. ¶ 29); that the Amway Defendants generally require a lengthy product claims verification procedure, (Nelson Aff. ¶ 22); and that the rapid introduction of ProFuel for sale through Amway-approved websites suggests that Defendants relied on Plaintiff's confidential test data (Nelson Aff. ¶¶ 21-22).

This Court determined that the evidence presented by Plaintiff was not sufficient to controvert the evidence produced by the Amway Defendants and was not sufficient to establish the existence of a genuine issue of material fact for trial. (Dkt. No. 52, 11/14/07

Op. 25.) Now, having had an opportunity to conduct discovery on the issues of the disclosure of confidential information and the misappropriation of trade secrets, Plaintiff has provided additional evidence in opposition to Defendants' motion for summary judgment.

Plaintiff essentially relies on two pieces of evidence in support of its contention that the Amway Defendants disclosed Plaintiff's confidential DurAlt fuel additive formula to the DNS Defendants. The new evidence consists of Mike Herblet's November 8, 2005, email forwarding "confidential" information to Defendant Disberger (Pl.'s Supp. Resp., Ex. 4), and Stephen Lenhardt's April 16, 2006, handwritten note that "Quixtar accidentally sent the recipe to Bill [Newton]" (Pl.'s Supp. Resp., Ex. 2). Plaintiff also contends that the fact that the individuals who developed ProFuel are not scientists, the fact that they did not form Trans Tech One, register ProFuel, or begin marketing ProFuel until after April 18, 2006, and the fact that ProFuel is a copy of an advanced DurAlt formula that had been provided to the Amway Defendants, all support the conclusion that the Amway Defendants disclosed the confidential formula, and that this disclosure served as the catalyst for the development of ProFuel.

In reply to Plaintiff's supplemental response, Defendants have come forward with evidence that the "confidential information" referenced in the November 2005 email was not in fact confidential, and the April 2006 handwritten note simply referred back to the mislabeled email. According to Defendants, Plaintiff has still failed to present any evidence to support its claim in Count II for breach of contract based on disclosure of confidential information or its claim in Count III for misappropriation of trade secrets.

5

Upon review of the evidence the Court agrees with Defendants that Plaintiff has not come forward with sufficient evidence of disclosure of confidential information or misappropriation of trade secrets to withstand Defendants' motion for summary judgment. Although Plaintiff has identified some superficial ambiguities in the evidence, a review of the evidence as a whole confirms that these ambiguities are readily explained and are not sufficient to create a genuine issue of fact for trial.

Plaintiff's evidence regarding the November 8, 2005, email is as follows. On November 1, 2005, Debi Pilkington, an assistant to Polar's President Mike Nelson, emailed Michael Herblet, a member of Defendant Quixtar's Sales and Marketing department, "CAS registry forms for DurAlt and DuraFlo." (Pl.'s Suppl. Resp., Ex. 4.) The attached CAS registry forms disclosed a list of chemicals contained in DurAlt Fuel Conditioner and DuraFlo Winter Fuel Conditioner. *Id.* The email requested that Herblet "consider this information to be proprietary and confidential and not for distribution outside Quixtar/Alticor or any other Alticor subsidiary." *Id.* In addition, both of the CAS registry forms were marked "PROPRIETARY AND CONFIDENTIAL INFORMATION OF POLAR MOLECULAR CORPORATION not for redistribution outside Quixtar, Alticor, and its subsidiaries." *Id.* Despite this confidential designation, Mr. Herblet emailed the information to Mr. Disberger, an individual who was not part of Quixtar or Alticor. *Id.*

Although Plaintiff identified the CAS registry forms as "confidential," that designation is not in itself sufficient to make them confidential. By its terms, the

6

confidentiality obligations in Section 5 of the 1995 Licensing Agreement do not apply to information which "(a) as shown by written records was known to recipient prior to disclosure hereunder [or] (b) is now, or hereafter becomes, without fault of recipient, known to the general public." (Dkt. 48, Pl.'s Resp. in Opp'n to Mot. to Dismiss, Ex. 2 at 6-7.) Similarly, Plaintiff's identification of the CAS registry forms as confidential and proprietary is not sufficient to make them trade secrets. Under Michigan law, to qualify as a trade secret, information must derive independent economic value from "not being generally known to, and not being readily ascertainable by" other persons who can obtain economic value from its disclosure or use and it must be the subject of "efforts that are reasonable under the circumstances to maintain its secrecy." M.C.L. § 445.1902(d). "'To be a trade secret, the information must, of necessity, be a Secret.'" *Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 626 (E.D. Mich. 2005) (quoting *Kubik, Inc. v. Hull*, 56 Mich. App. 335, 347, 224 N.W.2d 80 (1974)). "Trade secrets do not 'encompass information which is readily ascertainable, i.e., capable of being acquired by competitors or the general public without undue difficulty or hardship.'" *Id.* (quoting *Kubik, Inc.*, 56 Mich. App. at 348).

Defendants have presented unrebutted evidence that CAS registry forms are forms required by the Canadian government to regulate hazardous substances. CAS registry forms are similar to Material Safety Data Sheets ("MSDS") that the United States government requires be made available to persons potentially exposed during the manufacture, handling, and use of hazardous substances. (Dkt. No. 73, Def.'s Suppl. Resp., Ex. 2, Davison Decl.

7

¶ 3.) Because fuel additives contain hazardous substances, the federal government requires that MSDS forms be made available to persons potentially exposed during the manufacture, handling, and use of fuel additives. *Id.* The information contained in an MSDS form is necessarily public because its primary function is to notify members of the public of the hazards associated with making, transporting, selling and ultimately using hazardous substances. (Davison Decl. ¶ 6.)

The evidence is undisputed that prior to November 2005, Plaintiff provided MSDS forms for their DurAlt products to the Amway Defendants and others without a confidentiality designation. (Defs.' Suppl. Reply, Herblet Decl. 4; Defs.' Suppl. Reply, Disberger Decl. ¶¶ 8-9.) For example, in June and July 2005, after Plaintiff had entered into a Master Distribution Agreement with Defendant JBR Sullivan, Plaintiff sent Robert Disberger of JBR Sullivan MSDS forms for DurAlt Fuel Conditioner and for DuraFlo II Winter Fuel Conditioner. (Disberger Decl. ¶¶ 7-9, and Ex. B, C.) In October 2005 Plaintiff emailed Mr. Herblet MSDS forms for several of its fuel additives, including DuraFlo II Winter Fuel Conditioner. (Herblet Decl. ¶ 4.) Neither the MSDS forms nor the transmittal email were marked confidential. (*Id.*)

The CAS registry forms that were attached to the November 2005 email contained the same information that was contained in the "Hazardous Ingredients" section of the MSDS forms for those products that had previously been sent to Herblet without any confidentiality designation. Accordingly, Herblet assumed that Plaintiff's labeling of the

CAS registry forms as confidential was a mistake. (Id. at ¶8.) Upon receiving the CAS registry forms Herblet forwarded them to Amway's Canadian regulatory department for processing. (*Id.* at ¶9.) On November 8, 2005, in response to Disberger's inquiry regarding Amway's efforts to complete the product approval process in Canada, Herblet forwarded the CAS registry forms to Disberger. (*Id.* at ¶ 10.)

Because the contents of the CAS registry forms that were attached to the November 2005 email are identical to the contents of MSDS forms that had previously been sent to Herblet and Disberger without any confidentiality designation, and because the regulatory information is by its nature a matter of public information, Plaintiff's contention that the Amway Defendants emailed confidential information or trade secrets to Defendant Disberger on November 8, 2005, is not supported by the evidence.

That brings the Court to Plaintiff's second piece of evidence, Lenhardt's handwritten note from his April 16, 2006, telephone conference with Newton. Lehnardt noted that "Quixtar accidentally sent the recipe to Bill [Newton]." (Pl.'s Suppl. Resp., Ex. 2.) Lehnardt does not know what recipe Newton was talking about. (Pl.'s Suppl. Resp., Ex. 1, Lehnardt Dep. 85.)

Newton does not recall making such a statement to Lehnardt and states that he would not have told Lehnardt that Amway sent him the recipe for a fuel additive because that never happened. (Defs.' Suppl. Reply, Ex. 13, Newton Decl. ¶ 11.) According to Newton, Quixtar never sent any recipes to Newton, so he would not have discussed that with

9

Lehnardt.  (Pl.'s Suppl. Resp., Ex. 12, Newton Dep. 28.)  Newton suggests that he might have told Lehnardt what he had heard from Disberger, i.e., that Disberger had received confidential information about a PMC fuel additive from Amway, but Disberger did not send Newton the information and he did not give Newton any further details about what he had received.  (Newton Decl. ¶¶ 10-11; Newton Dep. 32.)

Newton's suggestion regarding what he may have discussed with Lehnardt is consistent with Disberger's testimony.  Disberger testified that when received the CAS registry forms with the "confidential" designation they looked like formulas to him. (Disberger Decl. ¶ 11; Pl.'s Suppl. Resp., Ex. 3, Disberger Dep. 108.)  In late 2005 or 2006 Disberger recalls mentioning to Newton that Amway may have accidentally sent him confidential information regarding Plaintiff's fuel additive products. (Disberger Decl. ¶ 13; Newton Decl. ¶ 10.)  However, Disberger did not give Newton any details about the information he had received, nor did he send Newton any written materials concerning the information he had received.  (Disberger Dep. 106-07; Disberger Decl. ¶ 12.)

It is undisputed that the "confidential information" Disberger referred to in his conversation with Newton was the CAS registry forms.  When the evidence is considered as a whole and when Lehnardt's handwritten note is reviewed in context, it is evident that it is nothing more than another reference to the disclosure of the non-confidential CAS registry forms in the November 8, 2005 Herblet email.

Neither does the timing of the development of ProFuel support an inference that

Plaintiff's formula was disclosed to the developers of ProFuel. The evidence is uncontroverted that when Amway announced its intention to discontinue production of Freedom Fuel, two separate groups of individuals began parallel but independent efforts to find another fuel additive supplier. (Disberger Decl. ¶¶ 12, 14; Lehnardt Dep. 15-18.) Because Disberger and Selzer had enjoyed success selling Amway's Freedom Fuel, they contacted at least five companies in their efforts to find an alternative fuel additive supplier. (Disberger Decl. ¶ 14.) At the same time, Stephen Lehnardt and his partner, Stuart Frizzell, were working with David Frizzell, a chemical engineer, to reverse engineer the DurAlt formula by analyzing a sample of DurAlt with a gas chromatograph and comparing their findings to the expired DurAlt patent. (Lehnardt Dep. 16-21, 37-42, 104-16.) Lehnardt and Frizzell's formula was substantially complete by mid-April when Lehnardt learned that JBR Sullivan was also working on developing a fuel additive replacement and they decided to enter into a joint venture with Disberger, Newton, and Selzer. (*Id.* at 36-38.)

On first blush Plaintiff's evidence may appear to support a suspicion that the Amway Defendants disclosed Plaintiff's confidential formula for an advanced DurAlt product to the DNS Defendants. Once developed, however, that evidence loses its suspicious nature. Plaintiff's evidence, viewed in the light most favorable to Plaintiff, is not sufficient to create a material issue of fact for trial. Plaintiff simply does not have evidence from which a reasonable jury could conclude that the Amway Defendants breached the confidentiality provisions of the 1995 Licensing Agreement, or that the Amway Defendants and the DNS

Defendants misappropriated Plaintiff's trade secrets.  Accordingly, Defendants are entitled to judgment on Counts II and III of Plaintiff's complaint alleging breach of contract and misappropriation of trade secrets.

    An order consistent with this opinion will be entered.


Date:     March 31, 2008            /s/ Robert Holmes Bell
                                                         ROBERT HOLMES BELL
                                                         CHIEF UNITED STATES DISTRICT JUDGE