UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLAR MOLECULAR CORPORATION,

       Plaintiff,

                              File No.  1:07-CV-460

v.

                              HON. ROBERT HOLMES BELL

AMWAY CORPORATION, et al.,

       Defendants.

_____/

## O P I N I O N

This Court previously dismissed or granted summary judgment for the Amway Defendants[1] and the DNS Defendants[2] on portions of Plaintiff Polar Molecular Corporation's complaint alleging trademark infringement, breach of contract, misappropriation of trade secrets, and conversion.  (Dkt. Nos. 52, 53, 83, 84.) This matter is now before the Court on the Driving Force Defendants'[3] motion for summary judgment on the basis of collateral estoppel on all issues previously decided against Plaintiff on the dispositive motions filed by the other Defendants (Dkt. No. 91), and on motions for summary judgment filed by all of the

---

[1]The "Amway Defendants" are Defendants Amway Corporation, Quixtar Inc., Alticor Inc., and Access Business Group L.L.C.  In this opinion the Court has not distinguished between the various Amway Defendants, instead referring to one or all of them as "Amway."

[2]The "DNS Defendants" are Defendants J.B.R. Sullivan Company, D.N.S. Marketing Company, Bill Newton, Jeff Selzer, and Robert Disberger.

[3]The "Driving Force Defendants" are Defendants Driving Force Technologies, LLC, Trans Tech One, LLC and Isabelle's Lighting, Inc.

Defendants on the remaining portions of Count I, alleging violations of the Lanham Act, and Count V, alleging conspiracy. (Dkt. Nos. 86, 93.) For the reasons stated herein, the motions for summary judgment will be granted.

## I.

The background facts are not in dispute. Plaintiff Polar Molecular Corporation, which is owned by Mark Nelson, developed a fuel additive known as "DurAlt." Plaintiff licensed the Amway Defendants to manufacture and sell DurAlt under the name "Freedom Fuel." Defendants Robert Disberger, Bill Newton and Jeff Selzer are top distributors for the Amway Defendants. In 2005 Plaintiff declined to authorize the DNS Defendants to manufacture Freedom Fuel. The Amway Defendants subsequently stopped manufacturing and selling Freedom Fuel. The DNS Defendants formed the Driving Force Defendants in order to develop and manufacture a competitive fuel additive called ProFuel. ProFuel was offered for sale on an Amway-approved website for a brief period of time.

The only counts of the complaint that have not yet been adjudicated are Counts I and V. Count I alleges a violation of the Lanham Act and Count V alleges civil conspiracy. In a previous opinion the Court declined to rule on "the sufficiency of Plaintiff's Lanham Act claim to the extent that it is based upon false statements that have caused confusion as to Defendants' association with Plaintiff or as to Plaintiff's sponsorship or approval of Defendants' goods or commercial activities." (Dkt. No. 52, 11/14/07 Op. at 9.) The Court also declined to dismiss Plaintiff's conspiracy claim to the extent that it was based upon

palming-off or unfair competition. (*Id.* at 15-16.)  In the joint status report filed on May 8, 2008, Plaintiff represented that the remaining portions of its Lanham Act and conspiracy claims in Counts I and V "involve an allegation that Defendants have falsely told and have conspired amongst each other to falsely tell potential customers and actual customers that there is a licensing agreement with Plaintiff for the manufacture and sale of ProFuel." (Dkt. No. 88, Jt. Status Report 2.)

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and/or admissions on file, that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).  Nevertheless, the mere existence of a scintilla of evidence in support of  Plaintiff's

position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

The Driving Force Defendants seek summary judgment on the basis of collateral estoppel on all issues previously decided against Plaintiff on the dispositive motions filed by the other Defendants. (Dkt. No. 91.) Specifically, the Driving Force Defendants seek judgment on the following claims: Count I alleging violation of Section 43(a) of the Lanham Act based upon the use of the "Freedom" trademark; Count III alleging misappropriation of trade secrets; Count IV alleging conversion; and Count V alleging conspiracy based on trade secret misappropriation.

The Sixth Circuit has established a four-part test for determining when collateral estoppel bars relitigation of an issue:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Kosinski v. Comm'r*, 541 F.3d 671, 675 (6th Cir. 2008) (quoting *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003)).

4

Although Plaintiff disagrees with the Court's prior rulings, Plaintiff acknowledges that the Court has ruled on each of the issues listed above and that collateral estoppel appears to bar further litigation of these issues.  (Dkt. No. 103, Pl.'s Resp. to Mot. for Summ. J.).

Upon review the court is satisfied that collateral estoppel bars relitigation of these issues.  Accordingly, the Driving Force Defendants' motion for summary judgment on the issues previously decided against Plaintiff will be granted.

**IV.**

All of the Defendants have moved for summary judgment on the remaining portions of Plaintiff's Lanham Act and conspiracy claims in Counts I and V on the basis that there is insufficient evidence to sustain the claims against them.  As noted above, these remaining claims are based on Plaintiff's allegation that Defendants have falsely told and have conspired amongst each other to falsely tell potential customers and actual customers that there is a licensing agreement with Plaintiff for the manufacture and sale of ProFuel.

In order to bring a false advertising claim under the Lanham Act a plaintiff must be able to establish the following five elements:

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence a deceived consumers' purchasing decisions; 4) the advertisements were introduced into interstate commerce; 5) there is some causal link between the challenged statements and harm to the plaintiff.

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 689 (6th Cir. 2000) (quoting *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir.1999)).

In their motions for summary judgment Defendants focus on the first element of the Lanham Act claim. The Amway Defendants contend that there is no evidence that they had any involvement in any statements that were allegedly false or misleading or that allegedly caused confusion as to Defendants' association with Plaintiff or as to Plaintiff's sponsorship or approval of Defendants' goods or commercial activities. The DNS and Driving Force Defendants contend that there is no evidence that they made any false assertions that ProFuel was a licensed product of Polar Molecular or Mark Nelson.

In response to Defendants' motions for summary judgment, Plaintiff relies on its complaint, the affidavit of Mark Nelson, the deposition of George Peintner, and the affidavit of Jennie Holtz. (Dkt. No. 102, Pl.'s Resp.)

Plaintiff's reliance on the allegations in its complaint is inappropriate. A summary judgment motion "requires the nonmoving party to go beyond the pleadings." *Celotex*, 477 U.S. at 324. "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Accordingly, for purposes of these summary judgment motions, the Court will not consider the allegations in Plaintiff's complaint.

Plaintiff also relies on the affidavit of its CEO, Mark Nelson.  Nelson's affidavit includes statements regarding information he was allegedly told  by Amway distributors. (Dkt. No. 102, Pl.'s Resp., Ex. 1, Nelson Aff. ¶ 27.)  Nelson states that he has "been informed by Quixtar distributors that Bill Newton, Jeff Selzer and Robert Disberger et. al. had told them along with potential and actual customers, throughout the country, that they had purchased the rights to Polar's technology from Alticor for the manufacture and sale of 'Freedom 2' (a/k/a ProFuel X-2) with the permission from myself and Polar."  (*Id.*)

Rule 56(e) requires that opposing affidavits be made on "personal knowledge" and to set forth facts that would be admissible in evidence, and to "show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). Nelson's statements regarding what he was told by Amway distributors are hearsay.  They are not based on personal knowledge and they would not be admissible in evidence.  "A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Sperle v. Michigan Dept. of Corrections* 297 F.3d 483, 495 (6th Cir. 2002) (citing *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000) (disregarding many of the plaintiff's allegations because they were based upon hearsay rather than personal knowledge).  Accordingly, the Court will not consider the statements in Nelson's affidavit that are not based upon personal knowledge.

The only other relevant evidence Plaintiff presents in opposition to Defendants' motions for summary judgment are the deposition of George Peintner, a diamond level

independent business distributor with Amway, and the affidavit of Jennie Holtz, a downline

independent business owner ("IBO").  Peintner testified that after speaking with Defendant

Disberger, he sent an email down-line to IBOs which contained the following information

with respect to ProFuel:

> Hello Gang.  Great news.  Those IBOs that enjoyed Freedom Fuel additive can
> find the product on the Quixtar website again. The name of the new product
> is ProFuel.  ProFuel is twice as concentrated and a third to half the cost of
> Freedom. . . . ProFuel has an info web page that gives you all the info on how
> to order and questions about the product. . . . Go to www.profuelproducts.com
> . . . and enter freedom2 for both the user name and pass code.  There you will
> find how to order the product on shop.com.  Any questions about the product
> can be answered by emailing ProFuel at the following address:
> info@profuelproducts.com.

(Pl.'s Resp., Ex. 7, Peintner Dep. 23-25; Pl.'s Resp., Ex. 8, Holtz Aff. ¶¶ 4-5.)

Jennie Holtz received a copy of this email from her upline IBO.  (Holtz Aff. ¶ 4.)

After going to the ProFuel website it appeared to Holtz that "the information pertaining to

ProFuel was identical to the information describing and promoting Freedom Fuel when it was

included in the Quixtar product line."  (*Id.* at ¶ 6.)

Peintner testified that he obtained the information for this email from Defendant

Disberger, who asked for Peintner's help in promoting the product.  (Peintner Dep. 25.)

Peintner assumed that Disberger had obtained clearance to market the product on Amway's

shop.com website, but later found out that the DNS Defendants had marketed ProFuel

through Isabelle Lighting on Amway's shop.com website without Amway's knowledge.  (*Id.*

at 25-27.)  Peintner testified that ProFuel was marketed on shop.com for only a short period

of time, and that as soon as it was brought to Amway's attention, Amway took corrective measures and ProFuel was removed from the website.  (*Id.* at 19, 27.)

Peintner did not believe that ProFuel was the same product as Freedom Fuel.  (*Id.* at 22.)  According to Peintner, ProFuel was not marketed as Freedom Fuel, but as a replacement for Freedom Fuel.  (*Id.* at 29.)  Peintner testified that the DNS Defendants led him to believe that "they had acquired the patent on the product and so it was going to be very similar if not the same."  (*Id.* at 31.)  Peintner's understanding was that "the ProFuel product was essentially the Freedom Fuel product with one difference and that was concentration.  They felt like they had a different product because the concentration levels were different."  (*Id..* at 35-36.)

Plaintiff contends that the evidence of record is sufficient to create an issue of fact as to whether Defendants took deceptive action to cause confusion as to the affiliation, connection or association of ProFuel with Plaintiff and caused confusion as to the origin, sponsorship, or approval of ProFuel.  The Court disagrees.

Plaintiff has produced no evidence linking the Amway Defendants to any statements or activities connected with ProFuel.  Although ProFuel was sold for a short period of time on Amway's shop.com website, the evidence is unrefuted that the Amway Defendants did not authorize the marketing of ProFuel on its website, and that they had ProFuel removed from the website as soon as they became aware of it.  The evidence is also unrefuted that the Amway Defendants had nothing to do with the ProFuel testimonial on the ProFuel website. (Dkt. No. 87, Amway Defs.' Br., Ex. 3, Disberger Dep. 114.)

Plaintiff attempts to attribute the statements and actions of Amway distributors and IBOs to Amway under an express or implied agency theory.   Contrary to Plaintiff's argument, there is no law or evidence to support Plaintiff's argument that Peintner, Disberger, Newton and Selzer are agents of the Amway Defendants and that their actions and statements can be attributed to the Amway Defendants.  Those cases that have considered the Amway Defendants' operations have unanimously held that Amway IBOs are not agents of Amway, and that Amway is not vicariously liable for their actions.  *See*, *e.g.*, *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1127-28 (10th Cir. 2003) (holding that Amway had not vested its distributors with actual, express, or implied authority, and noting that the distributors act virtually autonomously in determining in what manner to sell Amway products); *Lomax v. Henry*, 119 A.D.2d 638, 639, 501 N.Y.S.2d 84, 85 (N.Y.A.D. 2 Dept.,1986) (finding no legal basis for finding that Amway distributors were functioning as agents rather than independent contractors of Amway).  The Amway IBO Registration Agreement and the Amway Rules of Conduct specify that IBOs are independent contractors and that they are not employees, agents, or legal representatives of Amway.  (Dkt. No. 104, Amway Defs.' Reply Br., Ex. 11, 12.)

The only evidence Plaintiff has offered in support of its agency theory is Holtz's statement that as a Quixtar IBO she "received updates, new and pertinent information and guidelines from Quixtar's corporate headquarters including information regarding upcoming Quixtar products through communications from our up-line, individuals authorized by

10

Quixtar to supervise IBOs within their organization including myself."  (Holtz Aff. ¶ 3.)
This evidence is wholly insufficient to create an issue of fact as to whether Peintner,
Disberger, Newton, or Selzer was an agent of the Amway Defendants.  Because Plaintiff has
presented no evidence linking the Amway Defendants to any statements or activities
connected with ProFuel, the Amway Defendants are entitled to summary judgment on the
remaining portions of Counts I and V.

Plaintiff does not fare any better with its claims against the DNS and Driving Force
Defendants.  Although Plaintiff claims that these Defendants told others that they purchased
the rights to manufacture and sell ProFuel from the Amway Defendants with Plaintiff's
permission, the only direct evidence Plaintiff has offered in support of this claim is the
affidavit of Nelson.  (Nelson Aff. ¶ 27.)  As noted above, Nelson's statement to this effect
is not based on personal knowledge and is not competent evidence.

The only other evidence Plaintiff has presented against the DNS and Driving Force
Defendants is the Peintner email and the Peintner deposition testimony.  The Peintner email
does not mention Polar or Mark Nelson at all.  Peintner understood that ProFuel was similar
to Freedom Fuel, and that it was being marketed as a replacement for Freedom Fuel.  His
email regarding a new product called ProFuel reflects this understanding.  The email directs
inquiries about the product to www.profuelproducts.com.  The Court understands that the
email's references to "freedom2" as the user name and pass code and to the ability to order
the product from shop.com could conceivably create some confusion as to ProFuel's

11

connection with Amway. However, even if the email is evidence that the DNS and Driving Force Defendants improperly implied a connection between ProFuel and Amway, there is nothing in Peintner's email to suggest that those associated with ProFuel made any false or misleading statements about any relationship between ProFuel and Plaintiff, or its president, Mark Nelson.

Plaintiff has presented only one other piece of evidence in support of its claim that Defendants made false statements regarding the relationship between ProFuel and Plaintiff. This evidence is Peintner's testimony that the DNS Defendants said they had "acquired the patent on the product and so it was going to be very similar if not the same." (Peintner Dep. at 31.). This testimony is ambiguous at best. It does not indicate what any of the DNS Defendants said, or what patent was allegedly acquired. Defendants Disberger, Newton and Selzer have all denied telling anyone that Plaintiff licensed, sponsored, or approved their to manufacture or sale of ProFuel. (Dkt. No. 87, Amway Defs.' Br., Ex. 3-5, Disberger Dep. 112-15, Newton Dep. 35-36, Selzer Dep. 57-59.) Peintner's testimony regarding the patent claim can be understood to be consistent with the unrebutted evidence that the DNS and Driving Force Defendants developed ProFuel by reverse engineering Plaintiff's DurAlt formula based on a sample of DurAlt and the expired DurAlt patent. (Dkt. No. 83, 3/31/08 Op. 11.) If Defendants were referring to the expired DurAlt patent, there is no misstatement. If Defendants were referring to a patent for ProFuel, there is no misstatement. It is only if Defendants were referring to an unexpired DurAlt patent that this might be evidence of a

misstatement.  However, given the ambiguous and isolated nature of this alleged comment, the Court finds that this evidence is not sufficient to create an issue of fact for trial on Plaintiff's Lanham Act false advertising and conspiracy claims. Plaintiff has not presented sufficient probative evidence to permit a finding in Plaintiff's favor on more than mere speculation, conjecture, or fantasy.  *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy." (internal quotations omitted)).

For the reasons stated above, Defendants' motions for summary judgment will be granted.  An order consistent with this opinion will be entered.


Dated: December 4, 2008                                /s/ Robert Holmes Bell
                                                       ROBERT HOLMES BELL
                                                       UNITED STATES DISTRICT JUDGE